municipal court of Cleveland, and it is our contention that by analogy and by law the sections pertaining to the appeals from the justice of the peace court apply to appeal proceedings from the Canton municipal court to the common pleas court of Stark county.

We therefore find and hold that a litigant is entitled to an appeal from the municipal court of the city of Canton to the common pleas court of Stark county, Ohio, and the finding and judgment of the court below will be, and the same is hereby, reversed.

*Judgment reversed.*

HOUCK and SHERICK, JJ., concur.

ABRAMS *v.* THE STATE OF OHIO.

(Decided April 15, 1929.)

*Mr. J. B. Dworken* and *Mr. D. F. Anderson,* for plaintiff in error.

*Mr. Ray T. Miller* and *Mr. E. J. Hopple,* for defendant in error.

VICKERY, P. J. This case comes into this court on a petition in error to the common pleas court of Cuyahoga county, in which court Jonas Abrams, the plaintiff in error, was convicted of suborning one Abraham Goldman to give false testimony regarding the residence, and the length of it, of one Mrs. Ruby Meilke, who had started divorce proceedings in Cuyahoga county against her husband; she actually being a resident of Rochester, New York. In the trial below, as already stated, Abrams was convicted of this offense, and it is to reverse that judgment that error is prosecuted here.

Three several grounds of error are urged why this verdict and the judgment thereon should be reversed:

First. That the verdict and judgment thereon are manifestly and clearly against the weight of the evidence and are not sustained by sufficient evidence.

Second. Because of the misconduct of the assistant prosecuting attorney in his argument to the jury, who represented the state of Ohio, to which an objection was made and exception taken at that time.

Third. That the conviction under the indictment could not be sustained, because the court in which the divorce action was being tried had not acquired jurisdiction, because of nonresidence of a party, and that the court, therefore, had no jurisdiction to hear the case, and, therefore, a perjury in such action could not be committed, nor, of course, could there be any subornation to give false testimony in said action.

In disposing of the various grounds of error alleged in this case, I shall take them up in the inverse order in which I have stated them. First, as to the question of jurisdiction. It is needless to say that this indictment and conviction of Abrams grew out of an evil that has grown up in our courts; that is, of having dissatisfied married persons living in New York, particularly in and about Rochester, come out to Ohio, and, by false testimony and by committing a fraud upon the courts, procure a divorce in Ohio, and it is rather startling to have the attorney who started the proceedings invoking the jurisdiction of the courts to procure a divorce for his client, knowing her to be a resident of New York state, subsequently taking the position or raising the question

that, no matter how guilty of perjury and fraud a lawyer or other parties might be in relation to the fraud which they practiced upon the court, they could not be guilty of perjury, or of subornation of perjury, because the court had no jurisdiction. We do not think that such a position is tenable for a single moment. The court has jurisdiction of the subject-matter, and if the proceedings were regular, and in accordance with the laws provided in such cases, and service was procured by publication, after filing the necessary affidavit upon which a procurement of service by publication may be made, and this appeared regular in all respects, the court would have apparent jurisdiction and could grant a divorce, and such a divorce this court and other courts have frequently held would be binding against any collateral attack, and could only be affected by a direct attack upon the jurisdiction. I say it would be a queer state of affairs, if a lawyer could invoke the jurisdiction of the court and suborn witnesses to testify to carry out his fraudulent scheme with his fraudulent client, and then avoid responsibility by denying the jurisdiction of the court which he had invoked. Such a proceeding would not and could not be tolerated for a moment. It would heap only another insult and indignity upon the court of which he sought to make a tool with which to carry out his corrupt practices. He of all men, who procured the publication of the notice for service, surely invoked the jurisdiction of the court to carry out that purpose and to accomplish the thing for which he was employed; that is, to procure a divorce for a person he knows to be a non-resident. And in employing persons to commit per-

jury, he cannot then avoid responsibility by showing that a fraud which he had attempted to perpetrate upon the court had not succeeded as a matter of fact, and that, even though it had succeeded, the court would not have jurisdiction because of the person not having a residence in the state, and that, therefore, there could be no perjury, or subornation of perjury. Such, indeed, would be a very strange set of facts. Such we do not conceive to be the law.

This court has taken strong grounds against the way in which certain divorces have been obtained in this county, and has reversed several cases because of the fraud practiced upon the court, when the matter was directly attacked and full information was brought to this court. We do not think, therefore, that there is any merit whatever in the so-called alleged error which I am now discussing.

Our view of the law is well supported by 21 Ruling Case Law, pages 261 and 262, where the text substantially supports the position we have outlined above.

Now, coming to the second ground of alleged error; that is, the misconduct of the prosecuting attorney in his argument. We have read the argument of the prosecuting attorney, and must confess that it far transcended the scope of legitimate argument. It must be remembered that Abrams was indicted for suborning Abraham Goldman to testify falsely in the divorce case. Goldman was suborned as a witness. He was not called upon by the state, nor was he called upon by the defendant, and we think, from subsequent events, that the defendant was not called upon to produce Goldman upon the witness stand, but he was there within the call of

the prosecuting attorney. What he would have testified to no one knows, except that subsequently, I believe, he was found guilty of the offense of committing perjury in this very case, and I believe was paroled by the judge who presided over the trial; but his testimony was not in this present case, and, as already stated, he was in court and the prosecuting attorney referred to him many times, and held a paper in his hands and conveyed the impression to the jury that Goldman had confessed to this crime, and he asked many times, ''Why did not the defense put him on the witness stand?'' and made a rather vicious attack upon the defendant's case because defendant did not place Goldman upon the witness stand, and intimated, as already stated, that the defendant did not do it because of the knowledge that he would testify that he was suborned by Abrams to commit the crime of perjury. Well, perhaps the knowledge of what Goldman would testify to could just as easily be ascertained by the state as by the defense, and if Goldman would have testified to that which would convict Abrams, if a witness for the defense, we do not see why the state did not use him for the purpose of convicting Abrams; and the argument, under the circumstances, was highly improper. It was not for the defendant to prove himself innocent of the crime, and he need not put the witness upon the stand, to be subjected to cross-examination of the prosecutor, unless the state had made a case irrespective of that witness, and then it would be only a question of judgment on the part of the trial lawyer. We think the conduct of the prosecutor in the argument of this case was not warranted and was misconduct.

Whether that would be a ground sufficient to reverse this case, if it was otherwise perfect, it is not necessary for us to say. The court presiding over the trial corrected the matter, as far as he might, by proper instructions to the jury to disregard some of the statements of the prosecuting attorney. We perhaps would not reverse this case on the conduct of the prosecutor alone, but there is a far more serious objection to this verdict, and a far more serious reason why the case, if it must be reversed, should be reversed, and that brings me to the first in the order of the grounds of alleged error, to wit, that the verdict and judgment thereon are not sustained by sufficient evidence and are contrary to the evidence.

While we admit the grievous crime against the public, and the grievous fraud upon the courts, due to the loose manner in which divorce cases have been brought in from other states and our courts used as a clearing house for these persons who wish to have the marriage relation dissolved, yet we must not commit a graver error. We must not be permitted to find persons guilty of a crime as heinous as perjury or subornation of perjury, unless there be clear and convincing evidence to sustain it.

From reading this record, and from inferences that a lawyer might draw from the transactions in the case and from the relations of the parties, one might infer that Abraham Goldman was suborned by somebody, or was induced to or voluntarily committed perjury in the divorce case, in order that this woman might procure a divorce; but the record we are reviewing is the record of the state of Ohio against *Abrams* for suborning Abraham *Goldman*

to commit perjury in the divorce case, and for the purpose of finding that out we have examined this record with great care, and have heard able arguments, both by the counsel for plaintiff in error and by the able assistant prosecuting attorney who argued for the defense, and our attention has been called to the evidence, and especially all the evidence which relates to Abrams procuring or suborning Goldman to commit perjury, and the only evidence upon this question that bears upon it at all directly is upon pages 57 and 58, where a conversation took place in the office of Abrams between Mrs. Meilke and Abrams in Goldman's presence. The other witness, Mrs. Whalen, a friend of Mrs. Meilke, was present, but apparently did not hear the conversation. This testimony is brought into the record by Mrs. Meilke, the state's witness. The conversation is as follows:

"Q. When was the very first time you ever saw Goldman? A. Mr. Abrams introduced me to him.

"Q. Where? A. In Mr. Abrams' office.

"Q. And that is the Mr. Goldman who has been in the courtroom here, is it? A. Yes, sir.

"Q. What did he say when he introduced Mr. Goldman to you? A. He just said I was to testify I lived two years at his residence.

"Q. Yes; what else? A. There wasn't very much of a conversation.

"Q. You were to testify you lived two years at his residence? A. Yes.

"Q. What did he say? A. 'All right.'

"Q. Was there anything further said? A. No; there was not.

"Q. Was there anything said between Abrams and Goldman while you were there? A. No."

This is the sole conversation upon which the state predicates a right to conviction. Now, if one analyzes the conversation, it was an order from Abrams, or a suggestion from Abrams, that Mrs. Meilke was to testify that she had lived at Abrams' house for two years, and it was suggested that she commit perjury, rather than that Goldman commit perjury. Now it must be remembered that Abrams was convicted of suborning Goldman to commit perjury, and how the evidence of this woman in this connection sustains that theory is difficult to understand. There is not even a suggestion in the evidence that Goldman was to corroborate what this Mrs. Meilke said she was told to testify to; that is, that she had lived in his place for two years, or the length of time that she was supposed to have lived there. However subject a lawyer might be to discipline by the court which has control over his position as an officer of the courts, or to the bringing of disbarment proceedings against him for misconduct, nevertheless, when he is indicted, charged with a criminal offense, the evidence must be such that it proves beyond a reasonable doubt that he is guilty of the offense charged. One who has any gift of imagination can readily form the whole picture here, and from it one might draw the inference that Goldman would be useless, unless he would corroborate Mrs. Meilke, in that she had lived in the state of Ohio the requisite length of time to make her eligible to get a divorce; but, so far as this record shows, Mrs. Meilke might have done the suborning if Goldman testified to falsehoods, or he might have done it of his own volition, and, while Goldman might be guilty of perjury, it does not necessarily follow that

Abrams suborned him to commit the offense. So, taking this record altogether, and all the evidence in relation to any evidence that Abrams suborned Goldman, we fail to see how the state has any case.

Now, in the case of *State* v. *Ruskin*, 117 Ohio St., 426, 159 N. E., 568, 56 A. L. R., 403, the witness that was suborned testified that he had been employed by Ruskin to testify falsely as to the origin of the fire. Had Goldman been upon the witness stand, or been put upon the witness stand, either by the state or by the defense, and had he said that he testified in the case, because he had been induced to do so by Abrams, that he had been suborned either for money or for any other thing, the case would have been entirely different; but the conviction is supported on this question solely and alone by the testimony of Mrs. Meilke, and she does not say anywhere that she heard Abrams suborn, or induce, or ask, order, or in any manner influence the testimony of Goldman; and the testimony of the other witness, Mrs. Whalen, does not help it out in the least, for she claims she did not hear the conversation.

Now, contrary to that is the statement of Abrams that he did not, and one can come to only one conclusion, and that is that there is not sufficient evidence in this whole record to sustain the verdict, and the judgment based thereon, and, as already stated, we must not commit one wrong in order to right another. Two wrongs never made a right, nor will they ever.

After reviewing this whole record, we are constrained to come to the conclusion that this verdict must be reversed on the ground that the verdict is

manifestly against the weight of the evidence, and is not sustained by sufficient evidence.

The judgment will, therefore, be reversed, and the cause remanded to the common pleas court for a new trial.

*Judgment reversed and cause remanded.*

SULLIVAN and LEVINE, JJ., concur.