In Re Abrams.

(Decided January 27, 1930.)

*Mr. J. B. Dworken,* for plaintiff in error.
*Mr. S. H. Hazelwood, Mr. C. D. Friebolin* and *Mr. A. G. Newcomb,* for the committee.

VICKERY, P. J. This cause comes into this court on a petition in error to the common pleas court of Cuyahoga county, in which court Jonas Abrams, an attorney at law, was found guilty of unprofessional conduct involving moral turpitude, and was permanently disbarred from the practice of law, and it is to reverse this judgment that error is prosecuted here.

The matter involved in these charges is not new to this court, for this court reviewed a judgment of conviction for subornation of perjury of Jonas Abrams relating to the matter involved in this litigation.

It seems there came to Judge Carl V. Weygandt, one of the judges of the court of common pleas, knowledge of misconduct in office on the part of an attorney at law, and of unprofessional conduct involving moral turpitude with reference to a certain divorce matter then on hearing before Judge Weygandt, and, in accordance with the statutes of Ohio, and under the rules prescribed in such cases, Judge Weygandt appointed a committee of lawyers to formulate and present written charges against Jonas Abrams.

The committee was composed of Judge A. G. Newcomb, Carl D. Friebolin, and Stephen H. Hazelwood, three reputable lawyers of the bar of Cuyahoga county, and they, in due season, prepared and filed written specifications against Abrams involving charges of misconduct in his office as an attorney at law, and unprofessional conduct involving moral turpitude, and set up two separate specifications, both of which gave in full detail the basis for such charges.

On the trial of these charges—they being heard by a judge sitting here by designation from out of the county, Judge Worstell—the judge, after hearing the evidence on these charges, called in to sit in consultation with him Judges Fred Wolf and C. A. Reid, and after due consideration, and the hearing of arguments, the judges sitting as a trial court found that the committee appointed by Judge Weygandt had substantiated the charges, and disbarred said Jonas Abrams from the practice of law in the courts of Ohio forever; or, until he should be reinstated, if such time might ever occur.

Error was prosecuted to that finding. And several errors are urged why this judgment should be reversed.

One of the errors is that Judge Weygandt had before him one incident of the divorce of a Mrs. Whalen, who undoubtedly was a resident of Rochester, New York, and who came to this county for the purpose of getting a divorce, and procured Abrams to obtain such divorce, and the error complained of is that the committee included also in its specifications of misconduct the *Mielke case,* which likewise was a divorce case in which Abrams represented the plaintiff, Mrs. Mielke, who was also from Rochester, New York, and that, inasmuch as such case was tried before Judge Ewing, the committee had no business to go outside of the matter that had been submitted to it by Judge Weygandt.

We do not so conceive the power and duties of a committee appointed by the court to investigate and prefer charges against a member of the bar. While it is true Judge Weygandt started the proceedings by appointing a committee, after the committee was appointed it might investigate any charges of unprofessional misconduct involving moral turpitude or misconduct in office that might come to its attention. It acts in the nature of a grand jury to prepare and prefer charges, and there is no error in this respect that can be alleged against the charges filed. Whatever charges there were, were filed by the committee after it was appointed to such rather disagreeable duty by a court, and those charges were outlined in detail, and were filed in the court, and, in accordance with the rules of the court and the law, a copy was served upon Abrams, and he had his right to answer

to those charges, and he did. The fact that they embodied more than Judge Weygandt knew or contemplated at the time is utterly immaterial, if the committee was able to sustain these charges.

The charges are only two in number. One was for misconduct in office, and the other was for unprofessional conduct involving moral turpitude, and the two are closely allied.

In these specifications he was charged with misconduct in office and unprofessional conduct involving moral turpitude, in that he knowingly procured divorces, or attempted to, for parties who were not residents in the state of Ohio, and that he knowingly procured witnesses to testify in behalf of the parties in the divorce proceedings as to their residence in Ohio, when he knew they were not residents of Ohio. If these charges are true, they embrace both misconduct in office and unprofessional conduct involving moral turpitude. Such procedure was aiding and perpetrating a fraud upon the court. It was encouraging and aiding persons to commit the crime of perjury.

Now the question is whether the evidence in this case sustained either one or both of these charges.

We have gone over this record, and, as already stated, the proceedings are not unfamiliar to us, and one cannot read this record, or the record in the criminal case, without coming to the conclusion that Jonas Abrams was guilty of the grossest kind of professional misconduct, and that it involved moral turpitude, as already stated. The record is full of evidence of transactions that one blushes to think could take place in a court of justice and be partici-

pated in by an officer of the court and a member of the legal profession.

It is bitterly complained in the argument in this court that the trial court admitted evidence of a conviction for the crime of subornation of perjury, as though it were one of the charges, although it was not one of the specifications. An examination of the record will show that is not true. At the time these charges were drawn up and filed Abrams had not been convicted of the crime of subornation of perjury, and this member of the court wrote the opinion in the case when Abrams was afterwards convicted for suborning Goldman to testify falsely in the *Mielke case,* and the remarks of the writer in that opinion of reversal (34 Ohio App., 13, 170 N. E., 188) did not exculpate Abrams, but stated that there was no evidence to show that *Goldman* was suborned, in that record, and I think that is true now. But, however that might be, Abrams had not been convicted of suborning Goldman, or any one else, at the time these charges were filed. His case was pending when the charges came up for trial, and it is argued that the court abused its discretion in refusing to permit the passing of this case until after the criminal action could be disposed of. The court very properly said that these charges were independent of any conviction, and that there was no *charge* of any conviction, so that there was no reason for continuing the case, and the court was right.

If these charges as alleged in these specifications were true, the question whether a man were convicted or not convicted in a criminal case for subornation of perjury would be utterly immaterial. It

would show, in spite of the state not being able to convict him, that the main charges in these specifications, if proven to be true, would show him guilty of misconduct in office and of unprofessional conduct involving moral turpitude to such an extent that he was no credit to the bar, and should be removed from office. And so the conviction or acquittal was entirely aside from the purpose, and the court so held, and there was no error in this respect.

It is also bitterly complained in the argument that, notwithstanding the fact that among these charges there was no charge of conviction of a felony, the committee was allowed to introduce evidence to prove such charge, and the gravamen of that complaint is that under the statute conviction of a felony would be a good ground for disbarment. An examination of the record in this case will show that is not true. During the course of the hearing, after the committee had rested its case, Abrams took the stand in his own defense, and, during the cross-examination, he was asked whether or not he had not been *indicted* for subornation of perjury in connection with one or other of the specifications in the charges. This question was objected to, and the court sustained the objection, and then it was asked on cross-examination whether or not he had not been *convicted* of the crime of subornation of perjury. This was objected to, and the court overruled the objection, and the writer of this opinion thinks properly, for it tends to bear upon the credibility and character of the witness. I do not know of any criminal case where a man charged with a crime, who takes the witness stand, cannot be asked on cross-examination whether he has not been convicted of a

felony. It tends to reduce the reliability of his testimony, and that was the purpose of this. He was not charged in the instant case with having been convicted of a felony. That was not one of the charges, and the evidence must have been limited to the charges as they were before the court.

Now the claim is made that, inasmuch as the case was still pending at that time in the Court of Appeals, the question and the answer to it were improper. We do not think so. Counsel for the accused rightfully did ask and get into the record the fact that the case was still pending in the Court of Appeals, but, as the record then stood, the accused was convicted of a felony, and this court knows what happened to that case of conviction, for I myself wrote the opinion reversing the judgment of conviction; but he was not found guilty in the instant case of having been convicted of a felony, and he was not removed from his office for having been convicted of a felony. As already stated, the charges were formulated against him before he had been convicted, and therefore, notwithstanding the grievance of counsel in not having the case postponed, it would not have made a particle of difference upon the gravamen of these specifications whether he had ever been indicted, convicted, or acquitted; but only as to the truth or falsity of the charges. If he had been acquitted, as he was ultimately, it would not tend to lessen the gravamen of the charges filed against him, and, therefore, the court in refusing to pass the case until the criminal case should be disposed of, since that case had nothing to do with the matter, did not abuse its discretion.

Another matter that is bitterly complained of is

that on cross-examination Judge Newcomb, representing the bar committee appointed by the court, asked about certain testimony that had been introduced, concerning what Abrams was purported to have said in Judge Ewing's presence in the *Mielke case,* and it was objected to by Mr. Dworken on the ground that no such proceedings ever took place in any court or in any case. Judge Newcomb said that, if what he stated could not be substantiated by Judge Ewing, he would withdraw the testimony; and the court under that promise heard the testimony. Subsequently he sought to introduce Judge Ewing to substantiate what he had offered before, and this testimony was objected to, and the court, I think wrongfully, ruled out this testimony, and that necessarily ruled out the other which was conditionally received, and so that testimony was not before the court at all.

I think, under the statement of counsel for the accused in this case, "that no such proceedings ever took place before Judge Ewing," it was perfectly competent in rebuttal for Judge Newcomb to have shown that such proceedings did take place before Judge Ewing; and Judge Ewing, so far as is testified, substantially corroborated this statement and testified to what Abrams had said in his presence about Mr. Goldman being the landlord of Mrs. Mielke, and that he would be the next witness. As already stated, that testimony was ultimately ruled out because the question was regarded as leading, although under the rules of procedure and practice leading questions may be asked on rebuttal.

But however that might be the whole matter was a trial before a judge or judges, and they were able to sift the wheat from the chaff, and would not be

unduly prejudiced one way or the other, and the whole matter resolves itself into a plain question, and that is: Does this record show that the accused was guilty of misconduct in office or of unprofessional conduct involving moral turpitude? And I think it would be rather difficult in any disbarment proceeding to find a case where it was more clearly proven than is proven in this proceeding that an attorney at law was guilty of misconduct in office and of unprofessional conduct involving moral turpitude. It is almost incredible to believe that a lawyer could be so deceived as to take cases in the manner those were taken, from parties that appeared in the manner that these parties appeared to him, and not know anything more than he claims to have known in this case. It is incredible to think that a lawyer would try a divorce case or any other case without first interrogating the witnesses and finding out all about them. Another thing, the brother-in-law of one of these women testified as to what Abrams told him that he should be careful to conceal from the court —the fact that he was the brother-in-law of one of the women. I do not agree that it was necessary to have corroborative testimony from some one outside of the family, but when an attorney at law undertakes to conceal things from the court, which the court has the right to know, he is guilty of misconduct in office and of unprofessional conduct involving moral turpitude, and I have already stated that the mere fact that the jury did not convict this man—or, when they did convict him, the reviewing court reversed the judgment, and on a retrial he was found not guilty—in no way militates against the graveness of the charges contained in these specifications.

If such things can go on, the profession of law, instead of being an honorable profession, will become one from which all honest men would want to escape.

In order to keep the administration of justice clean and pure there must be a clean and upright bar. They are officers of the court, and owe a duty to the court, and they enjoy special privileges by being admitted to practice law, and they owe special duties to the public; and their behavior in office must be beyond criticism in order to maintain the high standing and dignity of the profession, and anything which militates against this is a detriment to the entire legal profession; and when the legal profession loses the respect of the public, the courts cannot properly administer their functions, and so such misconduct of an attorney strikes at the administration of justice. When a lawyer so far departs from his duty as a representative of his clients in court as to practice fraud and deceit upon the court, and attempts to procure a divorce or judgment for parties who are not entitled to the same, he has been guilty of misconduct in office and of unprofessional conduct involving moral turpitude. We think the charges in this case were sustained by sufficient evidence and there is no error upon which a reviewing court could justly base its judgment of reversal.

The record is full of the grossest kind of misconduct in office, and of unprofessional conduct involving moral turpitude, and the common pleas court committed no error.

It will not do to say that the judgment is harsh. Of course, the judgment is harsh, and it should be harsh. When a man is admitted to practice law, as

already stated, he enjoys certain privileges, and if he violates his duty with respect to those, and can no longer practice law, there are other fields of endeavor that may be opened to him where there is not such a high code of morals demanded.

We do not see that there is any error that will warrant a reversal of this case, and the judgment is therefore affirmed.

*Judgment affirmed.*

SULLIVAN and LEVINE, JJ., concur.