## BENNETT v. DISTRICT COURT OF TULSA COUNTY et al.

No. A-10464. Oct. 11, 1945.

(162 P. 2d 561.)

F. A. Rittenhouse, of Oklahoma City, Swank & Swank, of Stillwater, Blakeney & Blakeney, of Oklahoma City, Ownby & Warren, of Tulsa, Welch & Welch, of Madill, W. Hendrix Wolf, of Stillwater, and John Monk, of Stillwater, for plaintiff.

Randell S. Cobb, Atty. Gen., E. J. Broaddus, Asst. Atty. Gen., and Dixie Gilmer, Co. Atty., and M. S. Simms, and John L. Ward, Jr., Asst. Co. Attys., all of Tulsa County, for defendants.

BAREFOOT, P. J. Petitioner, Henry G. Bennett, was indicted by a grand jury in Tulsa county, Oklahoma, for the crime of perjury, and in this proceeding asks this court to issue a writ, prohibiting the district court of Tulsa county from prosecuting such action.

The original indictment containing three separate counts, each charging this petitioner with perjury, was filed in the district court of Tulsa county on November 17, 1943. The indictment charged petitioner with perjury in connection with certain evidence before a grand jury in Tulsa county.

Omitting the formal part, the information reads:

"  . . . in response to the following question propounded to him by the county attorney of Tulsa county:

" 'Dr. Bennett, will you kindly tell this grand jury what you know concerning the revision, or the purported revision, of the original Bennett-Conger-Conger arithmetic which was adopted by the 1937 Textbook Commission as revised in 1937. For instance, will you kindly tell us under whose supervision it was revised, and what you know about this revision?'

"In answer to said question so propounded to him by the county attorney of Tulsa county, the defendant testified as follows:

" 'I know nothing whatsoever about any revision or contemplated revision of the original Bennett-Conger-Conger arithmetic as adopted by the State of Oklahoma in 1933. I discussed with no person whomsoever anything at all about any revision or proposed revision to be made in 1937. As a matter of fact, the first time I knew that there had been a proposed revision or a revision of this arithmetic was several months after it had been adopted by the Textbook Commission when a printed copy of the revised book was handed to me.'
* * * *

"Count Two:

" 'Dr. Bennett, at any time prior to the adoption of the Textbook Commission appointed by William H. Murray in 1933, and as a consideration for the adoption of your books, Steps in Arithmetic, by that Commission,

were you requested, and did you make, an assigment of all your royalties. as author, or any percent thereof, to the said William H. Murray Foundation?'

"The defendant answered and testified as follows:

" 'I do not know.'

\* \* \* \*

"Count Three:

" 'Dr. Bennett, will you tell this Grand Jury, please sir, if you have taken any part in the political campaign of either Robert S. Kerr, Leon C. Phillips, or any other person, for Governor of the State of Oklahoma and have you taken any part in aiding or assisting in the election of any other person in the State of Oklahoma to public office?'

"The defendant answered and testified as follows:

" 'I have never engaged in politics in the State of Oklahoma. I have never assisted, either directly or indirectly, any person in any race which they have made for office in the State of Oklahoma, from Governor to justice of the peace. I have never spoken in behalf of any candidate for office, either publicly or privately, and the only assistance I have ever given any candidate for office was my single vote cast at the polls. It would be absurd for a man in my position to belittle himself by engaging in politics.'

"That all of the said testimony and statement and answers given to the question(s) propounded by the county attorney, in the presence of the grand jury, was material to the question, investigation and issues then and there being inquired into by the said grand jury, and the said testimony, statements and answers aforesaid were false and untrue, and were corruptly and falsely made, and were so known to be so by the said defendant at the time; and the said defendant did then and there unlawfully, wilfully, knowingly, falsely, corruptly and feloniously commit perjury in the way and manner as aforesaid. \* \* \* "

This indictment was filed on November 17, 1943. On November 22, 1943, a petition for habeas corpus was filed in this court, and on November 24, 1943, an application for writ of prohibition was filed.

Thereafter and on December 9, 1943, three separate indictments were returned against petitioner, the indictments charging the same offenses, verbatim, as the three counts in the original indictment.

At the hearing before this court on the above-mentioned petitions (it appearing that the grand jury of Tulsa county had also indicted petitioner and others, wherein they were charged with the crime of conspiracy), it was ordered that the hearing be continued until petitioner and his codefendants should have opportunity to file motions to quash the indictments returned in Tulsa county, and file demurrers thereto, and after said motions and demurrers were heard by the district court of Tulsa county, in case of an adverse ruling, the hearing would be resumed in this court.

This procedure was followed: The trial court, after hearing much testimony, sustained the motions to quash the indictment in the conspiracy case against all of the defendants. The court also sustained the motions to quash two of the perjury charges against petitioner Bennett (cases Nos. 11,465 and 11,466 in the district court of Tulsa county), but overruled the motion as to case No. 11,464, concerning the Bennett-Conger-Conger arithmetic, and it will be here considered. Complete copy of the testimony taken before the district court of Tulsa county on the motions to quash the indictments has been filed as a part of the record in this case.

The state appealed from the ruling of the court sustaining the motion to quash in the conspiracy case as

to all of the defendants. This court has today rendered an opinion affirming the decision of the lower court in that case, and holding that the action was barred by the statute of limitations, and that Tulsa county grand jury was without jurisdiction to make an investigation of the facts as alleged in the indictment because the venue did not lie in Tulsa county. See State of Oklahoma v. Bennett, 81 Okla. Cr. 206, 162 P. 2d 581.

At a hearing before this court, an agreement was made between the parties and approved by the court, that a hearing should be had and all cases heard at the same time, including the state's appeal from the order quashing the indictments, and the petitions for writs of prohibition and habeas corpus filed by the different defendants. It was agreed at the time that oral argument should be had and all briefs and records would be considered in all the cases and matters filed which were pertinent thereto, and the record applied to all of the cases.

At a hearing before this court, the state abandoned any contention as to the perjury charge against petitioner Bennett upon the second and third cases, and only contended the validity of the first case as above set forth.

By reason of the filing of the application for writ of prohibition, it becomes unnecessary to discuss the petition for writ of habeas corpus, as the same question is involved in both cases.

It is contended by the state that the writ of prohibition should not be granted for the reason that petitioner had the right to appeal, if finally convicted.

The writ of prohibition is a highly remedial writ, and as a general rule will not be granted unless absolutely

necessary. The right of this court and the Supreme Court to grant the writ cannot be questioned. Ex parte Herrin, 67 Okla. Cr. 104, 93 P. 2d 21; Herrin v. Arnold, 183 Okla. 392, 82 P. 2d 977, 119 A.L.R. 1471; Ex parte Wood, 71 Okla. Cr. 200, 110 P. 2d 304; Vandervort v. Keen, 184 Okla. 121, 85 P. 2d 405; Corley v. Adair County Court, 10 Okla. Cr. 104, 134 P. 855; Warner v. Matthews, Dist. Judge, 11 Okla. Cr. 122, 143 P. 516.

The Criminal Court of Appeals has no desire to exercise the right of prohibition or of habeas corpus in passing upon the constitutionality of statutes, but as above stated, has the undoubted right to do so, and under certain circumstances will exercise that right. The latest expression of this court was in the case of Ex parte Strauch, 80 Okla. Cr. 89, 157 P. 2d 201, where we said:

"While the Criminal Court of Appeals does not look with favor upon testing the constitutionality of a statute by habeas corpus, nevertheless, it has the authority to pass upon the constitutionality of a statute in such a proceeding, and will exercise that authority where necessity exists and the public good demands. The Supreme Court has announced and followed the same rule."

In the case of Evans v. Willis, 22 Okla. 310, 97 P. 1047, Judge Williams of the Supreme Court said:

"The next question arises as to whether or not the writ of prohibition herein sought is the proper remedy. Such writ will not be issued on account of errors or irregularities in the proceedings of a court having jurisdiction, or on account of insufficiency of averment or pleading, or upon matters of defense which may be properly raised in the lower court. Ex parte Branch, 63 Ala. 383; Epperson v. Rice, 102 Ala. 668, 15 South. 434; Clark v. Superior Court, 55 Cal. 199; 16 Enc. Pl. & Pr. p. 1126, and authorities cited in footnotes 2-4. The better rule appears to be that the writ will be issued where the lower

court appears to be without jurisdiction upon the record and admitted facts. 16 Enc. Pl. & Pr. p. 1128, and authorities cited in footnotes 1 and 2. Such extraordinary writ will not be awarded when the ordinary and usual remedies provided by law, such as appeal, writ of error, certiorari, or other modes of review or injunction, are available. Ex parte Smith, 23 Ala. 94; Ex parte Smith, 34 Ala. 455; Ex parte Scott, 47 Ala. 609; Ex parte Reid, 50 Ala. 439; Ex parte Mobile, etc., R. Co., 63 Ala. 349; Weaver v. Leatherman, 66 Ark. 211, 49 S. W. 977; 16 Enc. Pl. & Pr. p. 1130, and authorities cited in footnote 2. There is no general rule by which the adequacy or inadequacy of a remedy can be ascertained, but the question is one to be determined upon the facts of each particular case. The writ will not be issued on account of the inconvenience, expense, or delay of other remedies, but will be granted where the remedy available is insufficient to prevent immediate injury or hardship to the party complaining, particularly in criminal cases. 16 Eng. Pl. & Pr. p. 1131, and authorities cited in footnotes 1 and 2. It appears that in criminal cases neither appeal, habeas corpus, nor certiorari would be a plain, speedy, or adequate remedy. 16 Eng. Pl. & Pr., p. 1132, and authorities cited in footnote 1. The undisputed facts showing the indictment upon which the prosecution was based to be absolutely void, the writ of prohibition was declared to be the proper remedy. Bruner v. Superior Court, 92 Cal. 239, 28 Pac. 341; People v. Spires, 4 Utah 385, 10 Pac. 609, 11 Pac. 509; People v. Carrington, 5 Utah 531, 17 Pac. 735; People v. Southwell, 46 Cal. 141; People v. Colby, 54 Cal. 37; People v. Hunter, 54 Cal. 65; Levy v. Wilson, 69 Cal. 105, 10 Pac. 272; Ex parte Brown 58 Ala. 542; 16 Eng. Pl. & Pr. p. 1132, and authorities cited in footnotes 1 and 2. It appearing as a matter of record that the information exhibited in the court below was by a private prosecutor, and it being admitted in the answer of the respondent that the county attorney had refused to file an information against the relator, and no other officer authorized by law having filed such information, the county court is without juris-

diction to try said cause. If judgment is pronounced against the relator upon the verdict of the jury, it might result in his being incarcerated in jail pending an appeal. An appeal in such an instance would not be such an adequate and speedy remedy as to prevent immediate injury or hardship to the relator. When it appears to the court having jurisdiction to issue the writ of prohibition that the lower court, under any conditions, is without jurisdiction to try the accused upon the alleged information filed, with all amendments permitted under the law considered as made, to require him to invoke the remedy of appeal occasioning delay and necessitating a supersedeas bond, or resulting in his being confined in jail pending the determination of his appeal, when the same conclusion as to the lower court being without jurisdiction will be reached, would work an unnecessary and unreasonable hardship upon the accused.

"The writ of prohibition is awarded. All the Justices concur."

References has been made by the state to the dissenting opinion in the case of Moss v. Arnold, 63 Okla. Cr. 343, 75 P. 2d 491. This being a dissenting opinion, would of course not be controlling. However, it was not intended to say in the dissenting opinion in that case that the court did not have the right to grant the writ, but that it should only be granted where the remedy available is insufficient to prevent immediate injury or hardship to the party complaining, particularly in criminal cases. The question of the court not having jurisdiction of the subject matter was not there involved, as it is here, and will be hereafter discussed.

At the time of oral argument, numerous questions were raised, such as the right to appeal from an order overruling or sustaining a motion to quash an indictment or information where evidence was taken; and that it was necessary to specifically allege in the indictment

or information that the court or body before whom the testimony was given had jurisdiction of the subject matter about which the false testimony was given. There are many cases supporting this contention. Others do not follow the rule, for the reason that technicalities are not favored. Under the policy and decisions of this court, we have sought to avoid the upholding of technicalities, and under our liberal procedure with reference to construing the terms of indictments and information, we are of the opinion that no such technical construction should be placed thereon. It is true the indictment in the instant case does not allege in specific terms that the court under which the Tulsa county grand jury was organized had jurisdiction of the subject matter under investigation; but it does allege that the matters were being investigated in Tulsa county, Oklahoma, and we deem it advisable to disregard any technical rule with reference to the interpretation of the charge preferred in the indictment, and decide this case upon its merits.

It is first contended that where the court had no jurisdiction of the person or subject matter under investigation, the grand jury had no power to investigate matters outside its county and not triable therein, and an indictment for perjury could not be sustained under the above conditions.

The statute authorizing grand juries to make investigations in this state is Tit. 22 O. S. 1941 § 311, and is as follows:

"A grand jury is a body of men consisting of twelve jurors impaneled and sworn to inquire into and true presentment make of all public offenses against the State committed or triable within the county for which the court is holden."

Perjury is defined as follows (Tit. 21 O. S. 1941 § 491):

"Every person who having taken an oath that (he) will testify, declare, depose or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, wilfully and contrary to such oath, states any material matter which he knows to be false, is guilty of perjury."

As heretofore stated, we have held that the evidence introduced before the grand jury and on the motions to quash the indictment in the conspiracy case revealed that the three-year statute of limitations of the state was a bar to the prosecution of the defendants in the conspiracy case, and that the venue did not lie in Tulsa county, but was in Oklahoma county. That the Tulsa county district court did not have jurisdiction to try the defendants for the reasons above stated. The contention of the state was that certain books were sold in Tulsa county within the statutory period in which prosecution may be instituted, and that the conspiracy was a continuing conspiracy, and therefore the charge was not barred by the statute of limitations.

In the conspiracy case, this contention has been decided adversely to the state, and under these conditions we are now confronted with the question of the validity of the indictment for perjury against the defendant Bennett, and whether the writ prohibiting the district court of Tulsa county from trying petitioner on the perjury charge should be granted, in view of the above holding, and the facts here presented.

In 41 Am. Jur. § 23 (the section preceding the one cited by the state) the following general rule is announced:

"In order to constitute perjury, the false statement must be made in a proceeding, or in relation to a matter, within the jurisdiction of the tribunal or officer before whom the proceeding is held or by whom the matter is considered."

Many cases are cited to support this rule, and among them the case of People v. Rogers, 248 Ill. 322, 180 N.E. 856, 82 A.L.R. 1124, relied upon by the state.

The cases cited by the state are: State v. Ackerman, 214 Mo. 325, 113 S.W. 1087, 22 L.R.A. (N.S.) 1192; Mackin v. People, 115 Ill. 312, 6 Am. Cr. Rep. 556; People v. Rogers, supra; Flowers v. State, 13 Okla. Cr. 221, 163 P. 558; and Moss v. Arnold, supra.

The state also cites and relies upon 41 Am. Jur., p. 15, § 24, which is as follows:

"A distinction is to be observed between want of jurisdiction to take cognizance of a case and want of jurisdiction to proceed to judgment therein. It frequently happens that want of jurisdiction in the latter sense arises from some matter dehors the record which appears only after investigation. Hence, while a court may not have jurisdiction to proceed to judgment, it may have jurisdiction to take cognizance of a case in the first instance, until the facts showing lack of jurisdiction appear; and testimony given on a record showing jurisdiction is none the less perjury because the facts later appear defeating jurisdiction. Thus, one is not relieved from liability for perjury, in falsely swearing to residence to give the court jurisdiction of his suit for divorce, by the fact that the court has no jurisdiction because he did not in fact acquire the necessary residence. It has also been held that perjury may be predicated of false testimony on the trial of a third person for a crime other than that for which he was extradited from a foreign country."

In the case of Missouri v. Ackerman, supra, the defendant was charged with perjury in connection with certain testimony with reference to an indictment returned by the grand jury charging the sale of intoxicating liquor by Harve Smith and George Brent. There was no question that the grand jury and the court under which it was serving had jurisdiction of both the person and the subject matter under inquiry. The question raised was that the false testimony given was immaterial to the issue. The testimony of the defendant was with reference to whether as a drayman he had hauled certain liquor to and from the home of one of the defendants. The trial court held that this testimony was immaterial, and quashed the indictment. The Supreme Court held that the evidence was material to the issue, and reversed the case. The question of jurisdiction of the court was not raised and as this was an appeal by the state, the defendant did not file a brief or appear on appeal. In the note following the case, in 22 L.R.A. (N.S.) 1192, the following appears:

"May perjury be predicated on false testimony before the grand jury on matters immaterial to the issue?"

This note indicates that this was the only question considered in the Ackerman Case.

In the case of Mackin v. People, supra, the same condition appears. The defendant was indicted for perjury, growing out of the testimony with reference to ordering certain spurious ballots and substituting them at an election, and his denial of these facts. There was no question of the court's jurisdiction and the right of the grand jury to conduct the investigation. There was jurisdiction of both subject matter and the person. The crime had been committed within the venue of the county where

the charge was filed. It was the duty and right of the grand jury to make this investigation under these facts.

In the case of Flowers v. State, supra, the facts are in no wise similar to those in the instant case. There was no question but that the court had jurisdiction, and the sustaining of the perjury charge was entirely proper.

The case of People v. Rogers, supra, was a case where defendant was indicted and convicted of perjury by reason of false testimony given in a divorce proceeding. His testimony was that he lived at 14 West Erie street, Chicago, and that he had given his wife no cause to leave him, and did not know her whereabouts, and that they had no child or children. It was contended by defendant that even though the testimony of defendant was false, the trial court lacked jurisdiction of the person of Mary A. Rogers, and therefore perjury could not be predicated upon his testimony. The court held that while the trial court did not have personal jurisdiction of one of the parties, it did have jurisdiction of the subject matter, and defendant having submitted himself to the jurisdiction of the court and filed a petition for divorce asking affirmative relief, he would not be relieved from a perjury or false swearing charge simply because the court did not have jurisdiction of one of the parties. In this case, in 82 A.L.R., beginning on page 1127, there appears an elaborate annotation upon the "offense of perjury as affected by questions relating to jurisdiction of court before which testimony was given." This case is cited in 41 Am. Jur. § 23.

Many cases from the Federal, states and English courts are cited supporting the general rule heretofore announced. Among them are the following from Oklahoma: Peters v. United States, 2 Okla. 116, 37 P. 1081;

Rich v. United States, 2 Okla. 146, 37 P. 1083; Thomas v. State, 36 Okla. Cr. 209, 253 P. 514. See, also, Berry v. State, 10 Okla. Cr. 308, 136 P. 195, and Morford v. Territory, 10 Okla. 741, 63 P. 958.

In the case of Berry v. State, supra, it is said:

"Under the law in this state a justice of the peace has no jurisdiction to preside over the trial of any civil or criminal proceeding outside of the district court for which he was elected or appointed.

"Any trial had or any business attempted by a justice of the peace outside of the district for which he was elected or appointed is a nullity.

"Perjury cannot be predicated on testimony alleged to have been given in a void proceeding before a justice of the peace, for the reason that such proceedings are entirely without legal force and binding on no one."

In the case of Morford v. Territory, supra, the true rule is expressed in the first paragraph of the syllabus:

"Perjury cannot be assigned upon the alleged false testimony of a witness given in the course of a trial, where the court has no jurisdiction of the offense charged, or of the defendant. But, if the proceedings are merely erroneous or voidable, even if there be such irregularities or defects as would require a reversal of the case on appeal, false testimony given in the course of such trial, if material, does constitute perjury."

The first paragraph of the syllabus in the case of People v. Rogers, supra, is as follows:

"It is essential to the crime of perjury that the tribunal before which the false swearing is alleged to have been committed shall have jurisdiction of the subject matter of the cause."

We have found no exception to the general rule that where the court or grand jury had no jurisdiction of the

subject matter, perjury would not be sustained. There are some cases, as the Rogers Case, where the proceedings were merely erroneous or voidable, or the court had had jurisdiction but for some reason had lost it, and the evidence was material, a charge of perjury would be sustained.

This exception has been applied in divorce cases where it was held that the court had jurisdiction of the subject matter, but not of the person. And the rule is based upon the ground that the party who had sworn falsely had voluntarily come into court and sought its jurisdiction and relief. People v. Rogers, supra; Markey v. State, 47 Fla. 38, 37 So. 53; Stewart v. State, 22 Ohio St. 477; Abrams v. State, 34 Ohio App. 13, 170 N. E. 188; and see cases cited in 82 A.L.R. page 1127.

But these cases are at best only exceptions to the general rule, which is supported by all of the authorities. Not a single case holds that perjury will lie where the court or tribunal before whom the false swearing was had did not have jurisdiction of the subject matter.

Following are quotations from some of the cases with reference to the necessity of the court having jurisdiction of the subject matter before perjury will lie:

In the case of Thomas v. State, 36 Okla. Cr. 209, 253 P. 514, it was said:

"Perjury in giving testimony in the trial of a case can be committed only in a court having jurisdiction of the particular case."

In re Dauphin County Grand Jury (Pa.) 2 Atl. 783, 120 A.L.R. 414:

"The crimes to be investigated must have been committed in the county where the investigation is held."

Beal v. State, 15 Ind. 378:

"Our criminal law is entirely statutory, and not of common law origin. Our grand jury is a local tribunal, and cannot inquire into offenses committed out of its jurisdiction."

Panky v. People, 2 Ill. 228:

"It will not be doubted that one of the essential ingredients necessary to constitute legal perjury, is, that the tribunal or the body before whom the false swearing is alleged to have been committed, must have legal authority and power to inquire into the cause or matter investigated. Apply this principle then to the case before us. From whence could the authority of the grand jury be deduced to institute and inquire into an officer's taking illegal fees for the service of process? It is not a criminal act, nor could an indictment be founded thereon, be the fact of taking illegal fees ever so clearly established. A remedy has been provided by the infliction of a penalty for such acts; but the modes of proceeding to enforce such penalty are entirely of a civil nature. How, then, could the grand jury have had jurisdiction over the subject matter of the inquiry? It is too evident to doubt that it was a subject of inquiry which they had neither the rightful authority to examine, nor upon which to found an indictment, let the facts ever so clearly establish the actual taking of illegal fees."

Tindall v. State (Fla.) 128 So. 494:

"There is no question raised here that the grand jury did not have jurisdiction to investigate and indict for the offense under consideration by the jury. * * *

"False testimony, before a grand jury, in order to be perjury, must necessarily be as to a matter which the grand jury had power to investigate, and if it had such power, then the question of materiality is governed by the same rules as govern testimony in the trial of an issue in court."

State v. Gates, 107 N.C. 832, 12 S.E. 319:

"When therefore, the court has no jurisdiction of the subject matter in the investigation of which the false swearing is alleged to have taken place, there could be no issue, in contemplation of law, and the false swearing is not perjury. * * *

"Taking these facts to be true, the court had no jurisdiction of the offense, and it was therefore immaterial in law whether defendant swore falsely or not."

Pigg v. State (Tex. Cr. Cr.) 160 S. W. 691:

"A grand jury is an inquisitorial body pertaining alone to offenses committed within the county or that could be prosecuted in the county and has no power to inquire concerning offenses committed beyond the county's boundaries."

In Etheridge v. State, 76 Tex. Cr. Rep. 473, 175 S. W. 702, the following statement is made:

"There is an unbroken line of cases in Texas, * * * laying down three propositions: First, the court must have jurisdiction of the subject-matter; second, it must have jurisdiction of the person; and, third, that the court must have authority to render the judgment rendered. Without the concurrence of these three propositions, the judgment would be void, and this by all the authorities. There is another line of decisions, equally well-known and unbroken, to the effect that the judgment of the court would be void where the court had gone in excess of, or beyond, its jurisdiction."

See, also, Emery v. State, 57 Tex. Cr. Rep. 423, 123 S. W. 133; Laird v. State, 79 Tex. Cr. Rep. 129, 184 S. W. 810, 3 A.L.R. 522; People v. Howland (Cal.) 44 P. 342.

The case of State v. Mitchell, State Bank Examiner, et al, 202 N. C. 439, 163 S. E. 581, is almost identical

with the facts here presented. Mitchell, the chief State Bank Commissioner, with others, was appointed by the Corporation Commission. He was charged with the usual duties of that office. The Corporation Commission and the Bank Commissioner's offices were located in Raleigh, Wake county, North Carolina. Mitchell and other commissioners were indicted on three counts in Buncombe county where they were charged with conspiracy in failing to perform their duties by permitting certain banks and banking institutions to remain open for receiving deposits of money, and transacting business, knowing that said banks were unsafe, unsound and insolvent. These banks were located in different counties of the state, and not in Wake county. A plea in abatement and demurrer were filed attacking the venue in Buncombe county. This plea was sustained by the Presiding Judge in Buncombe county, and he attempted to enter an order transferring the case to Wake county. A motion was filed in the superior court of Wake county alleging the facts as above set forth. The superior judge sustained the motion to abate, and the demurrer, and discharged the defendants. The state excepted and appealed. The Supreme Court affirmed the decision of the trial court, and in the opinion stated:

"The plea raises the question whether a grand jury in Buncombe County had jurisdiction or power to indict the defendants for alleged misfeasance, malfeasance or non-feasance in the county of Wake. * * *

"With respect to the question presented, the common-law doctrine was clearly defined. 'The grand jury,' said Blackstone, 'are sworn to inquire only for the body of the county, pro corpore comitatus; and therefore they cannot regularly inquire of a fact done out of that county for which they are sworn, unless particularly enabled by an act of parliament.' 4 Com. 303. No less direct is

Hawkins's Pleas of the Crown; 'But of whatsoever nature an offense indicted may be, whether local or transitory, as seditions, words, or battery, etc., it seems to be agreed, that if upon not guilty pleaded it shall appear, that it was committed in a county different from that in which the indictment was found, the defendant shall be acquitted.' C. 25, Sec. 51. 'At common law, the venue should always be laid in the county where the offense is committed, although the charge is in its nature transitory, as seditions, words or battery; and it does not lie on the prisoner to disprove the commission of the offense in the county in which it is laid, but it is an essential ingredient in the evidence on the part of the prosecutor, to prove that it was committed within it.' 1 Chitty on Criminal Law, 177. The substance of this summary has been referred to in a number of our decisions. State v. Lytle, 117 N. C. 799, 23 S. E. 476; State v. Carter, 126 N.C. 1011, 35 S.E. 591; State v. Oliver, 186 N.C. 329, 119 S.E. 370.

"The orderly sequence of these propositions is the question whether this principle of the common law prevails in the courts of this state. Before the adoption of our Constitution it was declared that all such parts of the common law as were theretofore in use within the state, and were not destructive of, repugnant to, or inconsistent with the freedom and independence of the state and its form of government and not otherwise provided for, abrogated, repealed, or become obsolete, were in full force within the state. This statute is now in effect. C. S. § 970. It is generally conceded that so much of the common law as is in force by virtue of this provision is subject to legislative control and may therefore be modified or repealed. But there are parts of the common law which are not subject to modification or repeal by the Legislature because they are inbedded in the Constitution."

(See Tit. 12 O. S. 1941 § 2, and Tit. 22 O. S. 1941, § 9).

The court then refers to the statute, similar to the one we have in this state, giving the right to indict in either county where crimes are committed near the county line, which question is not involved in this case. The court says:

"The facts pleaded in abatement challenged the jurisdiction of the superior court of Buncombe county for the reason that the grand jury there was without jurisdiction to indict the defendants for a breach of the criminal law averred to have been committed in the county of Wake. At common law the grand jury of the county in which the bill was found had no jurisdiction of the indictment, and we have no statute enacted by the General Assembly except as heretofore noted, 'no act of parliament,' conferring such jurisdiction. Whether such a statute, if enacted, would be sustained as an exercise of legislative power or declared invalid because in conflict with the organic law is a matter outside the scope of this discussion.

"There was no error in sustaining the plea in abatement. The effect of the judgment is to terminate any further action or prosecution on the indictment found in Buncombe County and to discharge the defendant. State v. Carter, supra; State v. Oliver, supra.

"It is not necessary to consider the demurrer. The judgment sustaining the plea, declaring the indictment void, and discharging the defendant, is affirmed."

The Supreme Court of this state has had before it one phase of the proceedings of the Tulsa county grand jury, and the one which returned the indictment in the instant case. That was the case of Oklahoma Tax Commission v. Clendinning, 193 Okla. 271, 143 P. 2d 143. This was an original petition for prohibition filed on behalf of the Oklahoma State Tax Commission by J. Frank Martin, Chairman, and others, against S. J. Clendinning, district judge of Tulsa county, to prohibit enforcement

of an order for the Chairman of the Tax Commission to produce and open to inspection the individual tax returns of 50 named citizens of the state, and residents of some 25 or more counties of the state. The defendants indicted in the conspiracy case were among that number. The Chairman of the Tax Commission, J. Frank Martin, was called before the grand jury to testify, and upon his refusal to produce the individual income tax returns, was adjudged in contempt of court. By agreement sentence was delayed until application for a writ of prohibition could be made to the Supreme Court to determine the right of the district court to make the above order.

The Supreme Court, after fully considering the matter, and reviewing the statutes with reference to the duties and powers of a grand jury in this state (Tit. 22 O. S. 1941 §§ 311, 321, 324) said:

"By specific statutory enactment it seems clear that the power and authority of a grand jury is to investigate only crimes committed or triable within its county. While a grand jury has wide powers of investigation and indictment, definite limits have been placed thereon. It may not concern itself with investigation and indictment for offenses occurring wholly outside of the county wherein it is impaneled. Such functions are delegated by other provisions of the Constitution and statutes to the county attorney of such other county or to a grand jury duly impaneled therein. A grand jury is an arm of the court impaneling it and is, in some respects, subject to its supervisory action. Burke v. Territory, 2 Okla. 499, 37 P. 829. See also, annotation in 22 A.L.R. 1361 and 106 A.L.R. 1384. It is not contended by the county attorney herein that the grand jury is empowered to investigate crimes not committed or triable within the county, but he contends that it is for the grand jury to say in the first instance whether or not a violation of the law has

occurred, and if so whether or not it was committed within the county or whether or not it is triable in said county.

"In this connection it is alleged by the Tax Commission, and duly verified, and not denied by respondent, that none of the named citizens reside in Tulsa County or has any place of business in said county, and none of said returns was verified in said county. It is at once apparent therefore that the grand jury cannot concern itself with a violation of the income tax law by said citizens unless the statutory provisions give such authority."

The court then refers to the statutes of this state with reference to the right to examine income tax returns and comes to the conclusion that under the facts and the law, the grand jury of Tulsa county did not have the right to investigate the matters it was attempting to investigate, and that it did not have the right to examine the income tax returns requested, and the Supreme Court entered its decree granting the writ of prohibition as prayed for, in the following language:

"We therefore conclude that the income tax returns here involved were confidential and privileged; that the Tax Commission was not authorized to disclose their contents to the County Attorney or the grand jury above mentioned; that the grand jury was without authority to examine or investigate such returns for any purpose in the proper scope of its duties; that the court order in reference to production of such returns by the Tax Commission was beyond the authority and jurisdiction of the trial judge by reason of specific statutory provisions, and was an unauthorized application of judicial power; and that respondent should be prohibited by this court from further proceedings in that regard."

The reasoning and conclusion of Judge Williams in the case of Evans v. Willis, supra, apply in most strik-

ing terms in the instant case. We here have petitioner charged with the crime of perjury in the district court of Tulsa county. In the conspiracy case we have held that he could not be prosecuted in that case by reason of the fact that the crime was barred by the statute of limitations and that the district court of Tulsa county was without jurisdiction to try, or the grand jury to investigate because the venue of the action did not lie in Tulsa county.

In the proceedings filed in this court we have before us all the facts. An examination of this record reveals that if this petitioner were tried and convicted in Tulsa county, under the indictment charging him with perjury, and his case appealed to this court, it would result in the judgment and sentence being reversed for the reasons heretofore set forth. We are therefore of the opinion that it is our plain duty to grant the writ of prohibition in this case. The hardships incident to a trial, making a supersedeas bond, the expenses and delay of an appeal, when the court is absolutely without jurisdiction, demand that this be done. As was stated in the case of Evans v. Willis, supra:

"There is no general rule by which the adequacy or inadequacy of a remedy can be ascertained, but the question is one to be determined upon the facts of each particular case."

In the case of Jackson v. Superior Court (Cal.) 74 P. 2d 243, the Supreme Court of California had under consideration a petition for a writ of prohibition to prevent the judge of a municipal court from proceeding to try a defendant charged with murder, by reason of the fact that he would thereby be twice placed in jeopardy. The court in its opinion used the following language which applies to the facts in this case:

"Respondents urge that the writ should not be issued because petitioners possess a plain, speedy, and adequate remedy at law whereby they may preserve the rights which they hope to protect in this proceeding. They maintain that the plea of former jeopardy is one which the petitioners may or may not enter, their action depending on themselves and their counsel; that, if the trial court was in error in refusing their request to enter these pleas, and was in error in concluding that jeopardy had not attached, those questions might be raised on appeal if they should be convicted at their second trial, and would serve as a sure ground for reversal of the judgments which might be produced against them, which reversals would result in their discharge after the appeal had been decided. That the right to raise this question on appeal is plain cannot be doubted. That it is either speedy or adequate is open to serious question.

"It was admitted in argument that the trial will consume several weeks. With such a voluminous record to prepare, considerable time would necessarily elapse before the appeal could be perfected and decided. In view of the considerable discretion vested in us in issuing these writs, we are constrained to hold that, while the remedy at law is plain, it is neither speedy nor adequate under the facts before us and especially in view of the fact that in its final analysis the question before us is one of the jurisdiction of respondents to again place petitioners on trial for the offense charged in the indictment found against them. Menjou v. Superior Court, 128 Cal. App. 117, 16 P. 2d 1007; Huntington v. Superior Court, 5 Cal. App. 288, 90 P. 141; Oliver v. Superior Court, 92 Cal. App. 94, 267 P. 764." * * *

"It is our conclusion that petitioners were placed on trial in a court of competent jurisdiction on an indictment properly found and drawn, before a jury legally impaneled and sworn. It follows that under the rules prevailing in California jeopardy attached when the jury was sworn and that respondents have lost jurisdiction

to try them again for the offenses of which they, in the eyes of the law, have been acquitted.

"It is ordered that the demurrer to the amended petition be overruled and that the writ of prohibition be issued as prayed for."

The subject matter in so far as this perjury case is concerned is: Did the grand jury in Tulsa county have the right under the statute to investigate a crime which the evidence before it clearly showed was committed, if at all, in Oklahoma county? It clearly did not have that right, under the statute which provides that a grand jury may "inquire" into "public offenses" committed or triable within the county for which the court is holden. (Tit. 22 O. S. 1941 § 311.)

Neither the court nor the grand jury had jurisdiction of the subject matter under this statute. This statute was enacted for the purpose of prohibiting the investigation of public offenses and the indictment of parties therefor in counties other than where the offense was committed. The purpose of its enactment was two-fold. The Legislature did not desire to give authority for counties other than where the offense was committed to investigate them because of the expense that would be incurred in the making of the investigation and for the further reason that if an indictment was returned the court to which it was returned would not have jurisdiction to try the case and the work of the grand jury would be for naught. It was also considered that there was no valid reason for the investigation to be made by two or more different bodies whose objects and purposes might be entirely divergent. The facts in the instant case, as above cited, do not bring it within the exception to the general rule which is adhered to in the dissenting opinion filed in this case. There can be no ques-

tion in our opinion but that neither the district court of Tulsa county nor the grand jury of that county had jurisdiction of the subject matter in this case; and all the authorities, including those which recognize an exception to the general rule by reason of particular facts, state that where the court or body does not have jurisdiction of the subject matter, perjury cannot be based upon false testimony given at such hearing or trial.

At the time the perjury indictment was returned in this case the grand jury had been in session for 28 days. All of the evidence before the grand jury revealed that if any offense had been committed it had been committed in Oklahoma county, and not in Tulsa county. The petitioner Bennett was recalled before the grand jury on October 28, 1943, and the question upon which he was indicted for perjury was asked him. It was not material to the issue before the grand jury, as above stated, and with the full knowledge of the facts before the grand jury. It was not in an investigation of the facts. The facts were already before them. It seems that the question was asked with a view of indicting the defendant for perjury in Tulsa county, and if he could not be tried for conspiracy by reason of the three-year statute of limitations, and that Tulsa county did not have the venue, that the indictment for perjury would then be held against him in Tulsa county. The law does not permit such action by a grand jury under the facts in this case, and the question of better enforcement of criminal laws is in no wise involved.

It does not occur to us that to read into the statute by construction an encouragement or right for grand juries to interfere and make investigation of the facts where crimes are committed in another county, where

these facts were known by the grand jury attempting to make the investigation, as in the instant case, would have a tendency to the better enforcement of the criminal law. We think it would cause grand juries to often attempt to make investigations and interfere where the statute plainly provides that they do not have the jurisdiction to do so. This could be well illustrated where a citizen of one county had committed a crime in another county. Witnesses could be brought from the other county and indicted for perjury even though the crime was not committed in that county and the grand jury had no right or authority under the statute to make the investigation. Such an interpretation of the statute as contended in the dissenting opinion would only cause confusion and discord among different counties, and would serve no useful purpose. This was the very reason for the enactment of the statute by the Legislature. The illustrations given in the dissenting opinion have no application to the facts here presented, even though they might come within the exception to the general rule above announced. If a state of facts should at any time arise in the investigation before a grand jury that would bring it within the exception to the general rule, the exceptions could be applied. But the facts here do not justify the application. The facts here clearly show that the grand jury of Tulsa county knew at the time the perjury indictment was returned that the crime which they were attempting to investigate, if committed, was committed in Oklahoma county, and not in Tulsa county. The fact that petitioner was brought back before the grand jury after it had been in session for 28 days and immediately indicted for perjury is strong proof of the statements heretofore made.

We have heretofore discussed the questions of juris-

diction and venue, but there is another question presented which would be fatal when applied to the facts as revealed by the allegations of the indictment, and the testimony presented on the motion to quash.

It is universally held by all the courts and the textwriters that where one is charged with the crime of perjury, that the false swearing must be material to the issue or question under consideration. Brills Cyc. of Crim. Law, Vol. 2, p. 1420, § 867; 48 C. J. p. 832, § 31; 41 Am. Jur. p. 9, § 13; Huffine v. State, 13 Okla. Cr. 239, 163 P. 557; Washburn v. State, 47 Okla. Cr. 321, 288 P. 371; 21 R.C.L. 259, § 6.

The facts in the instant case in our opinion do not show the materiality of the question propounded to petitioner, to the issues under consideration by the grand jury. The question was as to whether certain parties had entered into a conspiracy to defraud the state by conspiring to secure thereafter the adoption of certain textbooks by the Textbook Commission serving in 1937. The question as to what petitioner knew as to the revision of the Bennett-Conger-Conger arithmetic was not material to the charge of conspiracy, which was under investigation. The trial court in his conclusion of the law and facts stated that the false testimony must be as to "a material fact pertaining to the subject matter." The evidence taken on the motion to quash revealed that this revision was made by the American Book Company. which company owned the rights under this contract, and that petitioner did not assist in preparing and knew nothing about the revision. The only testimony of the state was by A. L. Crable and Harry Haun, who, one of the grand jurors testified, said before the grand jury that they talked with Dr. Bennett about the revision of

the Bennett-Conger-Conger arithmetic prior to its revision. No statement was made as to what the conversations were. This is the only testimony that could in any way be considered as contradictory to the testimony of petitioner before the grand jury. It is unbelievable that this was sufficient evidence upon which to base an indictment for perjury, or that it was material to the issues involved. For this reason alone the indictment against petitioner for perjury should not be sustained.

The trial judge, at the time of passing upon the motion to quash, made an elaborate statement as to the evidence and the conclusions of law to be drawn therefrom. It revealed a careful study of the facts and the law. It was disclosed that large sums of money, extending into the thousands of dollars, had been paid to certain parties in this state, and no doubt for corrupt purposes. There is no evidence in the record that petitioner received any bribe money in connection with the conspiracy case, or in any other matter. The ones whom it was shown received this money have served prison terms in the Federal penitentiary. This court does not condone the action of any person who has violated the law. The evidence presented on the motion to quash the indictment in the conspiracy case was sufficient to sustain the contention that a part of the defendants indicted had entered into a conspiracy to procure the illegal adoption of textbooks, and that large sums of money had been paid to two of the defendants in the conspiracy case.

The terms of the statute of limitations and the venue in criminal cases are questions for the Legislature, and not for the courts. We can only interpret the law as it is written. We are concerned only with a proper inter-

pretation and administration of the law as applied to the facts presented.

With reference to the extension of the term of the statute of limitations, it may be stated that at the 1945 session of the Legislature, this limitation was placed at seven years, instead of three years, as it previously existed. Of course, this has no application to the case here presented.

For the reasons above stated, the writ of prohibition is granted, and the district court of Tulsa county is prohibited from proceeding with the trial of petitioner on the indictment returned in this case.

M. A. (NED) LOONEY, Special Judge, concurs. JONES, J., dissents.

JONES, J. (dissenting). I cannot agree to the conclusion of law reached by the majority, wherein it is held that irrespective of the falsity or materiality of the testimony given by a witness before a grand jury it could not be perjury if the evidence later showed that the venue for the crime being investigated laid in another county, or that the prosecution is barred by the statute of limitations.

The identical issue here involved has never been before this court for determination and calls for a close examination of our statute and decisions of other courts in order to arrive at a correct conclusion.

The issue before this court is: May a person be guilty of perjury for willfully and corruptly testifying falsely before a grand jury on a material matter in connection with an investigation where the crime or subject matter being investigated is within the general juris-

diction of the district court, but evidence introduced at a hearing on a motion to quash an indictment shows that no venue laid in the county where the investigation is being conducted or that the prosecution for the crime being investigated is barred by the statute of limitations?

In approaching this case and deciding the interesting question of law involved, this court should bear in mind the admonition of our distinguished former jurist, Henry Furman, wherein he stated:

"Penal laws are not enacted for the encouragement of crime and the protection of criminals, but they are enacted for the sole and express purpose of punishing and suppressing crime and thereby protecting society; and it is the paramount duty of courts to so construe them as to promote this purpose." Parker v. State, 7 Okla. Cr. 238, 122 P. 1116.

I have heretofore concurred in the opinion holding that the prosecution herein was barred by the statute of limitations, and, for that reason, the action of the district court of Tulsa county in quashing the indictment for conspiracy should be sustained. However, as I view the law, it does not follow as a necessary sequence that because the indictment for conspiracy must fall because of the bar of the statute of limitation or lack of venue that no person who testified before the grand jury in the investigation of this alleged offense may possibly be guilty of perjury, irrespective of the materiality of his testimony.

I think the learned trial judge who heard the evidence introduced at the hearing on the motion to quash the indictment was entirely correct in all of his rulings. He sustained the motion to quash the conspiracy indictment and, also, sustained the motion to quash two of the

perjury indictments against the defendant Bennett, on the ground that the testimony given by the defendant which formed the basis for the indictment was not material to any issue before the grand jury, but the said trial judge sustained one indictment against the defendant Bennett, two against defendant Willis Smith, and one against defendant J. T. Daniel. These indictments were sustained even though the trial judge had held that the conspiracy indictment must fall because of the three year limitation on the commencement of a prosecution for conspiracy and, further, because venue did not lie in Tulsa county. The reasoning given by the trial judge in sustaining the indictments for perjury is as follows:

"I wish first to dispose of a question as to whether the Grand Jury in Tulsa County had a right to investigate the alleged conspiracy referred to in Case No. 11,467. I hold that, not only under the instructions given to the Grand Jury by the court, but under the existing law or laws, the Tulsa County Grand Jury had a right to investigate the alleged conspiracy, and in connection therewith, I lay down this proposition of law: If it appears that a crime has been committed in the State of Oklahoma, and the Tulsa County Grand Jury is investigating the matter for the purpose of determining, first, the commission of the crime, and, second, if the said crime was committed in Tulsa County, that this grand jury, as a fact finding body, has a right to pursue the investigation, and should one appear before that body and testify falsely on a material fact pertaining to the subject matter, he is guilty of perjury, even though it was later determined that the crime under investigation was not committed in Tulsa County."

It is my opinion that this court should adhere to the rule which I think is in accordance with sound public policy and which will promote the ends of justice and

be conducive to the efficient enforcement of criminal law. This law is stated in 41 Am. Jur. 15, under the discussion of Perjury, as follows:

"A distinction is to be observed between want of jurisdiction to take cognizance of a case and want of jurisdiction to proceed to judgment therein. It frequently happens that want of jurisdiction in the latter sense arises from some matter dehors the record which appears only after investigation. Hence, while a court may not have jurisdiction to proceed to judgment, it may have jurisdiction to take cognizance of a case in the first instance, until the facts showing lack of jurisdiction appear; and testimony given on record showing jurisdiction is none the less perjury because the facts later appear defeating jurisdiction."

This identical rule of law is also stated in 82 A.L.R. 1138. See, also, West v. United States, 258 Fed. 413; Markey v. State, 47 Fla. 38, 37 So. 53; People v. Rogers, 348 Ill. 322, 180 N. E. 856; People v. McCaffrey, 75 Mich. 115, 42 N. W. 681; Commonwealth v. Weingartner (Ky.) 27 S. W. 815; State v. Ridley (N. C.) 19 S. E. 149; Stewart v. State, 22 Ohio St. 477; Abrams v. State (Ohio) 170 N. E. 188; Cordway v. State (Tex. Civ. App.) 8 S. W. 670; Laird v. State (Tex. Cr.) 184 S. W. 810; Reg. v. Cook, 167 Eng. Reprint 583; Reg. v. Proud, L. R. 1, c.c. 71; People v. Macken (Cal.) 89 P. 2d 173; Williford v. State (Ga. App.) 185 S. E. 611.

In Commonwealth v. Weingartner, supra, it is stated:

"It is urged also that the indictment should have shown jurisdictional fact that the premises in dispute in the forcible detainer case were situated in Campbell county, else the justice would have been without authority to administer an oath. We think differently. The officer was authorized to administer oaths generally. The subject matter of the controversy was one concern-

ing which the witness could legally be sworn, and about which, it sufficiently appears, he was required to be sworn, and this meets the requirements of the statute. Gen. St. c. 29, art. 8, § 2. The witness might have been sworn by the justice touching any matter, however material, connected with the proceeding, even to locating the premises; and, if he had knowingly and willfully sworn falsely, he is guilty, without regard to whether or not the justice had jurisdiction to render a final judgment."

In People v. Rogers, supra, it was held that it was essential to the crime of perjury that the tribunal before which the false swearing was alleged to have been committed should have had jurisdiction of the subject matter of the cause but that while a decree of divorce granted on false testimony concerning residence was void, the one giving the false testimony was nevertheless guilty of perjury, as the court had general jurisdiction of the subject matter of divorce actions.

In West v. United States, supra, it is said:

"It follows that, although a court may not have jurisdiction to proceed to judgment, it may have jurisdiction to take cognizance of a case in the first instance and until the facts showing lack of jurisdiction appear."

In State v. Ridley (N.C.) 19 S. E. 149, it is stated:

"It may be said generally that where the jurisdiction of the court is voidable by matter de hors, but no defect of authority appears upon an inspection of the record of an indictment, trial, and conviction, such a record cannot be collaterally impeached in a prosecution for perjury for taking a false oath in the course of the trial by showing that the jurisdiction might have been ousted, though it was not defeated."

Our statute defines perjury as follows:

"Every person who having taken an oath that (he) will testify, declare, depose or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, wilfully and contrary to such oath, states any material matter which he knows to be false, is guilty of perjury." (21 O. S. 1941 § 491.)

"It is no defense to a prosecution for perjury that the accused did not know the materiality of the false statement made by him; or that it did not in fact affect the proceeding in or for which it was made. It is sufficient that it was material, and might have been used to affect such proceeding." (21 O. S. 1941 § 496.)

In Smith v. State (Tex. Cr. R.) 20 S. W. 707, it is stated:

"Perjury is a false statement, either written or verbal, deliberately and willfully made, relating to something past or present, under the sanction of an oath, where such oath is legally administered under circumstances in which an oath is required by law, or is necessary for the prosecution or defense of any private right, or for the ends of public justice. An oath, legally taken in any stage of a judicial proceeding, civil or criminal, in or out of court or before a grand jury, is included in the description of this offense."

It is stated in the majority opinion that "it is essential to the crime of perjury that the tribunal before which the false swearing is alleged to have been committed shall have jurisdiction of the subject matter of the cause." I agree with this general rule of law; however, it has no application to the facts in the instant case because the district court of Tulsa county had jurisdiction of the subject matter herein involved. The subject matter is conspiracy to defraud the state (21 O. S. 1941 § 424) which is a felony and within the jurisdiction of a district court of Oklahoma. There is nothing

on the face of the indictment to show lack of jurisdiction. The only way the jurisdiction could be defeated was by introducing evidence to show that the venue actually laid in another county. The indictment alleged that the acts were committed in Tulsa county and the crime involved was within the general jurisdiction of the district court of Tulsa county.

As I view the record, the cases cited in the majority opinion do not pertain to the question herein involved. Thomas v. State, 36 Okla. Cr. 209, 253 P. 514, was reversed particularly because of comment made by the trial judge during the trial. However, in pointing out that perjury could only be committed in the trial of a case in a court having jurisdiction of the subject matter, it is stated that the county court has only jurisdiction to try misdemeanors and that the information charging perjury should allege that the crime involved was a misdemeanor within the jurisdiction of the county court. If it were a felony, the county court would not have jurisdiction of the subject matter and, therefore, no perjury could be committed.

In re Dauphin County Grand Jury (Pa.) 2 Atl. 2d 783, 120 A. L. R. 414, cited in the opinion, is not a perjury case and the writ of prohibition sought by petitioners to stop an investigation by the grand jury was refused. There is certainly no language in that opinion that would in any way be applicable herein.

Likewise, the case of Beal v. State, 15 Ind. 378. This was an appeal from a conviction for larceny and was reversed because of an erroneous instruction given by the trial court that larceny was a continuing offense and was complete in every jurisdiction into which the goods are taken. Nothing was said therein which would pertain to the issues in this case.

Also, in Panky v. People, 2 Ill. 228, a conviction for perjury was reversed because the grand jury was without jurisdiction to inquire into the illegal collection of fees by a constable. It was therein pointed out that there was no statute making it a criminal offense for a constable to take illegal fees for the services of process and that, therefore, the grand jury did not have jurisdiction over the subject matter of the inquiry. Clearly, such case would have no force herein because the district court of Tulsa county did have jurisdiction of the subject matter of conspiracy to defraud the state.

In Etheridge v. State, 76 Tex. Cr. Rep. 473, 175 S. W. 702, the conviction for perjury was affirmed and the quotation is from the dissenting opinion. However, the quotation is merely a reiteration of the general rule herein above stated with which I am in agreement.

In the case of State v. Gates. 12 S. E. 319, cited by the majority, the perjury was alleged to have been committed on the trial of a motion to tax costs against the prosecutor and the court there held that, since there was no statutory authority for the taxing of costs under such cases, that false swearing made on the trial would not be perjury because the trial court did not have jurisdiction of the subject matter.

In the body of the opinion, the court lays down the test to be applied in perjury cases as follows:

"The test, according to the authorities, seems to be that if, upon the state of facts alleged by the state * * * the court has jurisdiction, there is an issue if they are denied by the defendant, and any false swearing upon a matter material to such issue is perjury, although on the trial it might turn out that upon the truth of the facts as found, there was not any case against the defendant, or none of which the court had any jurisdiction."

This sets forth the rule of law for which I am contending. Under the charge given to the grand jury by the trial judge herein, they were to investigate to determine whether the crime of conspiracy to defraud the state had been committed and whether, if it had been committed, there had been any overt act committed in connection therewith in Tulsa county. This charge to them by the district judge was the triable issue before the grand jury.

Pigg v. State (Tex. Cr. Rep.) 160 S. W. 691, cited in the majority opinion, was an appeal from a conviction for the offense of betting on a ball game and was reversed on appeal on the facts and has nothing at all to do with the question of law involved in this perjury indictment.

Also, in Tindell v. State (Fla.) 128 So. 494, a conviction for perjury was affirmed on appeal and the sole question there was whether an investigation by a grand jury was a judicial proceeding so that false testimony given before the grand jury would be perjury under the statute, which defines perjury as being false testimony given in a judicial proceeding.

The case of Oklahoma Tax Commission v. Clendenning, 193 Okla. 27, 143 P. 2d. 143, involved an interpretation of the uniform state tax procedure act (68 O. S. 1941 § 1454,) which declared that tax returns should be confidential and privileged from inspection and disclosure. The county attorney of Tulsa county was seeking to force the Tax Commission to produce before the grand jury of Tulsa county the income tax returns of several citizens who were not residents of Tulsa county and the Supreme Court of this state merely held that under the provisions of the Uniform Tax Procedure Act

the Tax Commission could not be required to produce the tax returns of the named taxpayers, because of the restrictions set forth in said act. That since it was admitted that none of the named citizens resided in Tulsa county and none of said returns were verified in said county that the grand jury of Tulsa county could not be concerned with a violation of the Income Tax Law by the named citizens.

The case of State v. Mitchell et al., 202 N. C. 439, 163 S. E. 581, merely held that a grand jury in Buncombe county could not indict a defendant for a crime committed in Wake county. This case was cited and is in point with the decision reached in the conspiracy case (Bennett v. State, 81 Okla. Cr. 206, 162 P. 2d 581), this day decided.

A few illustrations will demonstrate the practical results of the rule of law adopted in the majority opinion. Assume that a dead man is found on a public highway in Tulsa county. An examination shows that his death had been caused by a blow from some blunt instrument. The grand jury being in session commences an investigation to ascertain whether a crime had been committed and, if so, whether it had been committed in Tulsa county. A witness testifies before the grand jury to facts showing a felonious homicide was committed by "X" in Tulsa county. Based on this testimony, an indictment is returned charging "X" with the crime of murder. At the trial, it develops that the deceased was killed in an adjoining county and that no venue laid in Tulsa county.

Or assume that "C" had murdered the deceased in Osage county. The witness "B", a pal of "C", goes before the Tulsa county grand jury and, to divert suspicion from "C", swears that "D" killed the deceased in

Creek county. No indictment is returned in Tulsa county, but a grand jury of Creek county calls the witness "B" before them and he again swears that "D" killed the deceased in Creek county. Based on this testimony, an indictment is returned in Creek county, charging "D" with murder. On the trial, "B" again swears that "D" committed the murder in Creek county, but the facts in the trial so clearly develop that venue laid in Osage county that the case was dismissed. Under the rule of law set forth in the majority opinion, the witness "B" in none of the above illustrations would be guilty of perjury, whether his testimony was given before a grand jury of Tulsa county, or grand jury of Creek county, or even on the trial of the case in Creek county, because the venue of the prosecution was in Osage county. Such a rule of law, in my opinion, is not sustained by precedent, is unsupported by sound reasoning, and encourages the commission of crime.

Three of the defendants in the conspiracy case (Shaw, Perry, and Drake) did not file motions to quash the indictment. If none of the defendants had presented a motion to quash the indictment, but had entered their pleas of not guilty and had proceeded to trial without questioning the venue, would the majority have allowed the petitioner herein to make a collateral attack on the jurisdiction of the district court in the conspiracy case in an original proceeding filed in this court to secure a writ of prohibition? To have done so would have been contrary to the decided cases, but, if they were consistent with their views expressed in the majority opinion, they would have assumed jurisdiction and issued the writ.

The statute herein above cited states that any person having taken an oath in any of the cases in which

such an oath may by law be administered contrary to such oath, states any material matter which he knows to be false is guilty of perjury. Nowhere in our statute do we find any provision that the giving of false testimony before a grand jury or on the trial of a case is not perjury, if it develops that the venue of the case is in another county, or that the action is barred by the statute of limitations. It is the duty of the Legislature to define crimes and prescribe punishment, and when an opinion such as is adopted by the majority is promulgated, it amounts to judicial legislating, or reading something into the statute which is, as I construe it, contrary to the legislative intent.

The only sound rule to follow, in my opinion, is to say that if the crime, or subject matter as the term is generally used, is one over which the court who undertakes the investigation has general jurisdiction, then the court may pursue its investigation to ascertain whether it has venue. If a witness is called who testifies to a material matter in connection with the investigation, then, under our statute, it would be perjury even though facts later appear showing that the venue for the crime was in another county than the one where the investigation is being made.

After the grand jury was empaneled and sworn, the district judge of Tulsa county gave them lengthy instructions, a part of which is as follows:

"The court would have you know that under the law of this State, it is mandatory upon every Grand Jury to make certain inquiries and these duties are listed as follows, to-wit:

"1. It is mandatory upon you to inquire into the case of every person imprisoned in the County Jail on

a criminal charge, or charges, who has not been indicted or bound over for trial by a committing magistrate prior to this date.

"2. It is mandatory upon you to inquire into the conduct and management of the public prisons in this county, or its subdivisions, and you are entitled to free access to the jails and prisons in making such investigations.

"3. It is mandatory upon you to inquire into wilful and corrupt misconduct in office of public officials of every description in Tulsa County, or any of its subdivisions. In this connection, you are entitled to examination, without charge, of all public records in the County. Such investigation as you may make of the public officials of Tulsa County, and its subdivisions, may include not only the elective officers but all of the appointive officials as well and may include every function and branch of government in this County."

"In addition to the above you have the authority to inquire into all public offenses committed and triable in Tulsa County and to present them to the Court by indictment or accusation in writing."

"In performing your duties, there are some matters which should be called specifically to your attention, and the Court asks you to make relentless examination of them without fear of and without favor to anyone.

"On September 10, 1943, the County Attorney of Tulsa County appeared before this Court, and stated that he had interviewed a number of persons who, in his opinion, had some firsthand knowledge in regard to the adoption and sale of textbooks, in the State of Oklahoma; that he had information to the effect that there had been corruption and dishonesty on the part of some person, or persons, in regard to textbook adoptions in the State of Oklahoma; that he had made a considerable investigation of this matter, and that in his opinion the calling of a Grand Jury would greatly facilitate the in-

vestigation. The Court instructs you to inquire into this complaint and to ascertain whether any crime has been committed by any person, or persons, connected with the adoption and sale of textbooks, or any other public offense has been committed with reference thereto in Tulsa County. That does not mean that your investigation should be limited to the particular charges above referred to. Your inquiry may be widened so as to pursue any avenue of information which, in your judgment may lead to the discovery of crime and the proper enforcement of the laws of this State."

Under the above charges to the grand jury, it became within the province of the grand jury to investigate and ascertain whether any fraud had been committed in Tulsa county in connection with the sale or adoption of textbooks. It was just as important to ascertain that no crime had been committed in Tulsa county as to learn that a crime had in fact been committed. Any evidence that would establish either theory was material to the investigation. It was the exact truth of the matter the grand jury had been charged by the court to ascertain. This, of course, could not have been done except by the testimony of witnesses called before them; otherwise, there could be no investigation on behalf of the people and crime would be undetected. Such an investigation is one of the cases in which an oath may be administered and perjury may be committed as defined by our statute. (21 O. S. 1941 § 491.)

Under the sanction of the law, such an investigation would be utterly fatal and even a farce if witnesses may testify falsely and no perjury could be assigned on such corrupt and false testimony. There was sufficient ground for suspicion that a conspiracy to defraud the people of the State of Oklahoma by charging exorbitant prices for textbooks had been formed and that this conspiracy might

have extended into every county in the state. Even if it had been no more than a mere suspicion that so grave an offense had been committed, it was sufficient to set the grand jury in motion to inquire into and true presentment make of the matter given them in the charge by the court. The right to investigate did not depend upon the fact that the alleged crime they were about to investigate had actually been committed. It was sufficient that the grand jury had undertaken to investigate an alleged crime to authorize them to call witnesses before them, and, if their testimony given upon such investigation is willfully and corruptly false, upon a matter material to the investigation, then, I think perjury may be assigned upon it. Unless a witness when called before the grand jury in such cases can be compelled to speak the truth, it would be impossible to detect crime. The very object of the investigation is to ascertain whether a crime has in fact been committed and, if so, whether it was committed in Tulsa county.

I do not care to go into an extended review of the facts as to the materiality of the testimony of the petitioner before the grand jury. The trial court heard the evidence on the motion to quash the indictment and ruled adversely to petitioner. On this disputed question of fact, the court ruled that there was sufficient evidence before the grand jury to show that the petitioner had testified falsely upon a material issue. Under the rule of law set forth in Syllabus One of the opinion in the conspiracy case (Bennett v. State, 81 Okla. 206, 162 P. 2d 581), the judgment of the trial court on that disputed question is binding on this court.

The evidence showed that there was a pretended revision of an arithmetic in 1937, of which the petitioner

was co-author, in order to increase the price for which the book was to be sold and that the royalties paid to petitioner as co-author were correspondingly increased. It is conceded that the revision was a farce and a sham and that school patrons in every county of the state were charged an additional six cents per book for this revised edition, which was unnecessary. Under the theory of the state, it was contended that this pretended revision was made as a part of the conspiracy to sell books at exorbitant prices to repay the coconspirator publishing companies for the bribe money which they paid in order to fix the adoptions. It was the contention of the state that the petitioner, realizing that the revision of the Bennett-Conger-Conger arithmetic was a sham and a fraud, sought to disclaim any knowledge of the proposed revision and testified before the grand jury that he had never discussed the proposed revision with any person prior to the time it was made. Harry Haun, agent for the American Book Company, who printed the revision, swore before the grand jury that he had talked with the petitioner about the proposed revision on two occasions before it was made. A. L. Crable, also, disputed the testimony of petitioner on this issue. However, I am not concerned in this dissent over disputed questions of fact and personalities involved, but I am deeply concerned over the adoption by the majority of a rule of law which will be applied in perjury cases in the future, a rule which I consider is based on a misconception of the issue which confronts us.

It appears to me that so long as the Constitution and statutes of this state recognize the grand jury as an inquisitorial body through which indictments for crime may be presented against an accused, that this

court should not read into the law anything which might circumscribe their action.

If a witness testified falsely to gain an advantage to himself, to deceive and confuse the investigating body and conceal the facts from the public, the plain words of our statute on perjury and public policy which called for its enactment alike demand that the telling of such deliberate lie completes the crime.

As to the statement in the majority opinion that "the facts here clearly show that the grand jury of Tulsa county knew at the time the perjury indictment was returned that the crime which they were attempting to investigate, if committed, was committed in Oklahoma county and not in Tulsa county," I cannot agree.

The textbooks which were adopted as a result of the bribes paid by the publishing companies were sold in Tulsa county as well as all other counties in the state and the grand jurors were advised by the county attorney that such sales constituted overt acts in furtherance of the conspiracy. I do not understand how the majority can say that the jurors, composed of laymen, knew that the crime was committed in Oklahoma county and not in Tulsa county when distinguished attorneys who appeared before us presented many authorities to sustain their respective contentions and the matter has been earnestly considered by this court for several weeks before any of the members of the court came to a definite conclusion as to the legal question involved.