HAWKINS, Presiding Justice,
for the court:
Tommie Lee Ford appeals his conviction of perjury in the circuit court of the Second Judicial District of Bolivar County.
Because the indictment was fatally flawed, the court erred in not quashing it; and because there was insufficient evi *371 dence on which to base a conviction, we reverse and render.
FACTS
Ford began part-time work with the Bolivar County Sheriffs Department and the Mississippi Bureau of Narcotics as a confidential informant in 1988. Sheriff “Mack” Grimmett hired Ford as a contract agent with the Bolivar County Sheriff’s Department on January 15, 1988, and deputized him. Ford was later hired as a full-time officer.
Ford was involved in drug investigations and often used to set-up drug dealers. He had been involved in thirty to forty cases when he bought cocaine from Ardell Grant, who was later indicted for its sale and delivery. At trial, Ford was the only witness for the State. During Ford’s cross-examination, Grant’s counsel asked several questions to elicit his credibility. Ford was asked the following questions by Grant’s counsel in chambers:
Q. Mr. Ford, have you ever been convicted of a crime?
A. No, sir.
Q. Were you in the military?
A. Yes, sir.
[[Image here]]
Q. And what type of discharge did you receive?
A. I have a [sic] honorable and a general.
Q. Honorable and a general. Do you recall testifying in a case earlier in December, involving Keith Brooks, were you asked that question and you said you had two honorable discharges?
A. A general is an honorable — under honorable conditions—
Q. Okay. That’s what you had?
A. Yes, sir.
Q. An honorable discharge and then a general, under honorable conditions?
A. That’s right.
Q. Were you convicted of any crime in the military?
A. No, sir.
Q. Were you court-martialed in the military?
A. No, sir.
Q. Isn’t it true, Mr. Ford, that in the military you were court-martialed and at one point you admitted to drug use — in fact, used it as your mitigating circumstances?
A. No, sir.
Q. That’s not true?
A. No, sir.
Q. Your testimony then is, you have not been convicted of any crime before you became a deputy sheriff or since that time?
A. Prior to misdemeanors — I had a few problems in Shelby.
Q. But you are talking about misdemeanors?
A. Yes.
Q. Nothing involving drug use?
A. No, sir.
The Court eventually dismissed the case against Ardell Grant.
Ford’s military record showed that under a general court-martial order a general court-martial was convened in Germany on April 80, 1982, in which he was arraigned and tried on three charges, namely: first, being absent without leave from February 3, 1981, until June 22, 1981; second, being absent without leave from July 9, 1981, until April 1, 1982; and third, insubordination to a non-commissioned officer. He pled guilty to the first charge, and was found not guilty of the other two.
The grand jury of the Second Judicial District of Bolivar County indicted Ford on October 25, 1989, for perjury committed in the trial of Ardell Grant. In pertinent part the indictment charged that Ford “felo-niously testified falsely that he had not been court-martialed in the military and that he had an honorable discharge and a general discharge under honorable conditions from the United States Army.” The indictment did not attempt to set out the truth as to these allegations.
Ford made a motion to quash the indictment, which was overruled.
*372 Following trial, Ford was convicted and has appealed.
LAW
Ford’s first assignment is that the circuit judge erred in overruling the motion to quash the indictment because of its failure to set out the true facts. We agree.
Miss.Code Ann. § 99-7-39 (1972) states: In an indictment for perjury it shall be sufficient to set forth the substance of the offense charged upon the defendant — that he was sworn or testified on oath, and before what court, or before whom the oath or affirmation was taken; averring the court or person to have had competent authority to administer the same, together with proper averments to falsify the matter wherein the perjury is assigned, without setting forth the bill, answer, information, indictment, declaration, or any part of any record or proceeding, either in law or equity, and without setting forth the commission or authority of the court, or the commission or authority of the person before whom the perjury was committed. (Emphasis added)
This Court in Hentz v. State, 510 So.2d 515, 517 (Miss.1987), quoting Chenault v. State, 154 Miss. 21, 122 So. 98 (1929), in discussing the essential elements of a perjury indictment, stated:
It was also held that the averment of falsity in an indictment for perjury must be made expressly and positively, and not by implication; and it was further held that an indictment for perjury must aver what the truth is in relation to the matter of which the perjury is assigned. The indictment before us does not conform to the principles laid down in this case, and we are of the opinion that the demurrer should have been sustained.
The Hentz Court reversed the conviction of subornation of perjury.
60A Am.Jur.2d Perjury § 75 states:
The falsity of the statement on which a charge of perjury is based must be alleged in the indictment. At common law and under certain statutes, it is necessary to make direct and specific allegations negativing the truth of the alleged false testimony by setting out the true facts. A mere general allegation that the testimony is false is insufficient.
In Fudge v. State, the Florida Supreme Court reversed an indictment failing to negate the truth of the alleged false testimony, stating:
That part of the indictment for perjury which expressly alleges the falsity of the testimony given by the accused is technically called the “assignment.” This is the gist of the offense, not mere inducement; consequently the allegation must be direct and specific, not in terms of uncertain meaning, or by way of implication. •
It is necessary, in an indictment for perjury, to expressly and positively negative the truth of the alleged false swearing, by stating the facts by way of antithesis. A general denial that the testimony in question was false is not sufficient. In addition to an averment that the testimony of the accused was false, the indictment should also set forth the truth in regard to the matter at issue. Thus, after stating the substance of what was sworn to, the indictment proceeds, “Whereas in truth and in fact,” adding wherein such matter was false.
Fudge v. State, 57 Fla. 7 at 10-11, 49 So. 128 at 129 (1909).
There has been only one special type of case, totally dissimilar to this one, in which we have departed from the requirement that an indictment for perjury must specifically allege the true facts.[1] In Chenault v. State, 154 Miss. 21, 122 So. 98 (1929), we reversed because the indictment failed to specifically allege the true facts such as date, location and persons present. Here the indictment’s allegations as to the true facts are not merely inadequate, but completely silent.
In this case it was particularly important that the indictment allege the true facts *373 with specificity because of the general nature of the statements alleged to be false.
We therefore hold that the indictment was fatally defective and should have been quashed.
If there were sufficient evidence to make a jury issue on perjury in this case, we would remand for Ford to be held under the same bond and await the action of the grand jury. Hentz v. State, 510 So.2d at 517. We find, however, that no jury issue on perjury was presented in this case, and Ford is entitled to be discharged.
The indictment was based upon false testimony Ford gave when questioned by defense counsel in chambers seeking to attack his credibility through prior criminal convictions. Apparently the circuit judge was conducting the examination out of the presence of the jury to test the competency of the defendant’s line of cross-examination.
The only way in which this line of questioning could have been material was to bring out a prior criminal conviction of Ford which was competent under Rule 609(a), Miss.R.Evid.:
(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect on a party or (2) involved dishonesty or false statement, regardless of the punishment.
Of course, for false testimony to be material, it must first be competent. United States v. Howard, 560 F.2d 281 (S.D.Ind.1977); Bennett v. Dist. Court of Tulsa County, 81 Okla.Crim. 351, 162 P.2d 561 (1945). See also 70 C.J.S. Perjury § 13. The testimony Ford gave about his discharge from the U.S. Army was not competent impeachment evidence, in any event, and therefore not material.[2]
The only remaining allegation in the indictment is that Ford falsely swore he had not been “court-martialed” in the military service. The factual basis for this charge in the indictment is the following testimony:
Q. Were you court-martialed in the military?
A. No.
As an attack on Ford’s credibility by virtue of previous criminal convictions, this was not a competent question. Only questions directed to his actual conviction of a crime were competent. A court-martial in and of itself is not necessarily a conviction.[3] The word “court-martialed” is subject to more than one meaning, as the following definitions illustrate:
court-martial. A court of the military, of one of the Armed Services, for the trial of offenses under the Code of Military Justice, which may be in the order of rank a general court-martial, a special court-martial, or a summary court-martial; a prosecution before one of such courts-martial.
Ballentine’s Law Dictionary 282 (3d ed. 1969).
COURT-MARTIAL. A military court, convened under authority of government and the Uniform Code of Military Justice, 10 U.S.C.A. § 801 et seq., for trying and punishing offenses committed by members of the armed forces.
Such courts exist and have their jurisdiction by virtue of the military law, the court being constituted and empowered to act in each instance by authority from a commanding officer.
Black’s Law Dictionary 427 (4th ed. 1968).
court-martial 1: a court consisting of commissioned officers and in the U.S. in *374 some instances other personnel of the armed forces for the trial of offenders who are members of the armed forces or are within the jurisdiction of the armed forces and for the trial of offenses against military law 2: a session of a court-martial: a trial by court-martial
Webster’s Third New International Dictionary 523 (1961).
To have made a question as to Ford’s being court-martialed competent, it was incumbent to have asked him had he been convicted by a military court-martial. He was not asked this question, however. The question asked him no more than if he had ever been tried for a criminal offense. This was incompetent evidence as an attack on his credibility as a witness, and insufficient to constitute the criminal offense of perjury.
We accordingly reverse and render the conviction and discharge the defendant.
REVERSED AND DEFENDANT DISCHARGED.
ROY NOBLE LEE, C.J., and PRATHER, SULLIVAN, PITTMAN, BANKS, McRAE and ROBERTS, JJ., concur.
DAN M. LEE, P.J., concurs in result only.

. Hogan v. State, 516 So.2d 474 (Miss.1987).

. Even if it were, Ford offered evidence that the U.S. Government had changed his discharge records, making him eligible for benefits based upon honorable service, which would also remove his discharge from being a subject of inquiry. Rule 609(c).

. While it is indeed correct that Ford testified he had not been convicted of any crime in the military, he was not charged with perjury in the indictment because of this testimony, but instead with having falsely denied he was “court-martialed.”